**STAR–KIST FOODS, Inc.,**

v.

**UNITED STATES (Bruno Scheidt, Inc.,
Party in Interest).**

**C. D. 1819; Protest No. 258737–K.**

United States Customs Court
First Division.

Nov. 8, 1956.

Lamb & Lerch, New York City (John
G. Lerch and David A. Golden, New
York City, of counsel), for plaintiff.

Bruno Scheidt, Inc., party in interest,
not represented by counsel.

George Cochran Doub, Asst. Atty. Gen.
(Richard E. FitzGibbon and Richard H.
Welsh, New York City, trial attorneys),
for defendant.

Before OLIVER, MOLLISON and
WILSON, Judges.

WILSON, Judge.

This protest against the classification
of the imported merchandise is filed pur-
suant to section 516(b) of the Tariff Act
of 1930, as amended by the Customs Ad-
ministrative Act of 1938, 19 U.S.C.A.
§ 1516(b). Section 516(b), supra, pro-
vides in part as follows:

"Classification.—The Secretary of
the Treasury shall, upon written re-
quest by an American manufacturer,
producer, or wholesaler, furnish the
classification of, and the rate of
duty, if any, imposed upon, desig-
nated imported merchandise of a
class or kind manufactured, pro-
duced, or sold at wholesale by him.
If such manufacturer, producer, or
wholesaler believes that the proper
rate of duty is not being assessed, he
may file a complaint with the Secre-
tary, setting forth a description of
the merchandise, the classification,
and the rate or rates of duty he be-
lieves proper, and the reasons for his
belief. * * * Within thirty days
after the date of mailing to the com-
plainant of notice of such liquida-
tion, the complainant may file with
the collector at such port a protest in
writing setting forth a description
of the merchandise and the classifica-
tion and rate of duty he believes
proper. * * * "

At the trial of this action, plaintiff
introduced in evidence certain documents,
purporting to establish compliance with
the provisions of section 516(b), supra
(plaintiff's exhibits 1 to 7, inclusive).
The suit is brought by the plaintiff here-

in, an American manufacturer, producer, and wholesaler of tuna fish, packed in oil.

The merchandise the subject of this protest (plaintiff's exhibit 8) consists of tuna fish, packed in brine, in airtight containers weighing with their contents not over 15 pounds each. It was classified under paragraph 718(b) of the Tariff Act of 1930, as modified by the trade agreement with Iceland, T. D. 50956, at the rate of 12½ per centum ad valorem as "Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances)."

Counsel for the defendant made a motion to dismiss the protest herein upon the ground that plaintiff had failed to show that it was a "proper party" to maintain the cause of action alleged in the protest and that, accordingly, it had not brought itself within the jurisdiction of this court. Counsel, in this regard, page 45, stated as follows:

"Mr. FitzGibbon: The Government moves to dismiss on the ground that the importer has not shown that he has come within the jurisdiction of this Court. * * * Section 516(B) under which the importer invokes the jurisdiction of this Court provides that an American manufacturer, producer or wholesaler may file a protest if he is such an American manufacturer, producer, or wholesaler of merchandise of the same class or kind as the merchandise which is imported. The record here affirmatively shows that this American manufacturer is not a manufacturer of the merchandise of the same kind or class as that which was imported. Therefore, I move to dismiss as not having been brought within the jurisdiction of the Court."

In the above connection, counsel for the plaintiff, in its brief (page 3), states:

" * * * there can be no question but that the grounds for this motion is the single premise that the plaintiff, although packing the identical tuna fish to that imported, uses only oil as the additive, whereas the imported merchandise uses brine as the additive.

"In other words, the success of his [Government's counsel] motion depends solely upon the determination of the Court of whether identical tuna fish, when packed in oil, is merchandise 'of a class or kind', as that packed in brine."

A number of exhibits were introduced in evidence, which will be hereinafter referred to as the discussion of the case requires.

Plaintiff's first witness, Donald P. Loker, vice president of the plaintiff concern, stated that he was familiar with the process of preparing and packing tuna fish from the time they are caught until sealed in tins and then put in warehouses. The witness stated, however, that his company does not pack such (merchandise) commodity in brine; that it is necessary to use a liquid in the packing of tuna fish to retain the moisture (R. 23–34), testifying in this connection as follows:

"We never pack tuna by itself without either distilled water or some oil or some additive. There is always some additive, but it is the same tuna, the same type of tuna, the same kind of cooking preparation, the same processing, the same packing, and the same thing but it just has a different additive."

Mr. Loker further testified as to the process employed by his company in the packing of tuna fish, substantially as follows: After the fish is caught, it is put in brine tanks, and, after unloading at the dock, it is weighed, thawed out, then cleaned, eviscerated, and washed. The material is then cooked and, after cooking, is slowly cooled down. Thereafter, the fish is cleaned, scaled, and the skin, heads, and tails taken off, the bones taken out, and the blood meat cleaned, leaving the cleaned loin. The fish is then packed

in cans, at which time "either oil, or a pinch of salt or distilled water" is added. The cans are hermetically sealed, washed free of any trace of oil or salt, sterilized, and, subsequently, put in cases and stored in the warehouse (R. 28–32). Plaintiff's witness testified that the process described above, as used in his plant in the production of Star-Kist white meat tuna (plaintiff's exhibit 9), was "substantially" the same as that employed in the processing of the imported tuna fish (plaintiff's exhibit 8) in Japan (R. 34–35). He further stated that the product put out by his company and that imported is sold to the same trade (R. 49)—"They are sold on the same markets and on the same shelves to the same consumers and for the same purpose" and that he had seen them sold at retail in delicatessens and in larger markets in New York City, Chicago, and Los Angeles (R. 50–54).

Plaintiff's second witness was Gerald George Scharer, vice president in charge of sales and advertising with the plaintiff firm. He also testified that his company never packed tuna fish in brine (R. 56) and then stated that "I have not sold Plaintiff's Exhibit No. 9 to my knowledge to the same stores that carried Plaintiff's Exhibit No. 8" (R. 57). This witness then admitted that there was a differential in price between the imported tuna product and that produced by his company and that, when a wholesaler orders, the nature of the pack is indicated—"He orders usually with that as a recognized factor" (R. 61).

While it may be true that the process employed in the country of exportation in the canning of the imported tuna fish, as described, supra, was substantially the same as that used by the plaintiff in the canning of its product, with the exception that brine is used as an additive in the case of the imported merchandise, whereas oil is used as an additive by the plaintiff, that factor is not decisive of the issue here involved.

In Parodi, Erminio & Co. v. United States, 8 Ct.Cust.App. 395, T.D. 37644, the merchandise consisted of tunny fish, cut in large cross-sections, packed in oil in tin packages of 5, 12, and 22 pounds' capacity. It was assessed with duty under paragraph 216 of the Tariff Act of 1913, 38 Stat. 134 at the rate of 25 per centum ad valorem as fish "packed in oil" in tin boxes or cans and was claimed properly dutiable under the same paragraph of the said act as "all other fish, * * * in tin packages, not specially provided for in this section," at the rate of 15 per centum ad valorem. The importer there contended that the first enumeration of paragraph 216 of the involved act for fish, packed in "bottles, jars, kegs, tin boxes, or cans," under which assessment was made, applied only to retail packages of the several kinds named, such as were delivered with their contents to the ultimate consumer, and that, accordingly, the importation there involved did not come within its terms, since, according to the court's findings, the containers in question were wholesale packages, the contents of which were broken up and parceled out to consumers in retail quantities. The importer further contended that the provision for fish in "tin packages," contained in the second enumeration of the paragraph included wholesale packages and that said provision governed the importation in question.

The appellate court, in the Parodi, Erminio & Co. case, supra, affirmed the decision of the Board of General Appraisers in holding that tunny fish, packed in oil, in large tins were properly dutiable under the first clause of paragraph 216 of the Tariff Act of 1913, providing for "fish * * * packed in oil or in oil and other substances, in bottles, jars, kegs, tin boxes, or cans," rather than under the second clause of the same paragraph providing for "all other fish * * * in tin packages," there being nothing in the language used to indicate that Congress intended to limit the involved fish-in-oil provision to the small or retail sizes. In so holding, the court, 8 Ct.Cust.App. at page 398 commented:

" * * * It seems clear that Congress intended by means of the provisions in question to impose a high-

er rate of duty upon fish when packed in oil than upon similar fish when not packed in oil. But if paragraph 216, supra, be construed so as to apply to retail packages only, then all wholesale packages of fish packed in oil in bottles, jars, and kegs would be wholly excluded from its operation, with the result that they would be admitted free of duty under paragraph 483 of the act. This would follow because the second enumeration of the paragraph, alleged by the importers to be the provision for wholesale packages, provides only for fish when in tin packages and not for such as are in bottles, jars, and kegs. And while it may be true that at present fish packed in oil are not commercially imported in wholesale bottles, jars, or kegs, yet it may also be true that fish thus packed are capable of being imported in such containers and may hereafter be so imported. The unambiguous language of the governing paragraph does not favor a construction which would result in admitting fish packed in oil free of duty, if imported in so-called wholesale packages of glass, stoneware, or wood."

While the specific questions presented in the Parodi, Erminio & Co. case, supra, had to do with the nature of the containers of the imported merchandise for duty purposes, it appears significant to observe that our appellate court there pointed out the congressional intent to distinguish between fish "packed in oil or in oil and other substances" and fish not so packed.

In United States v. Post Fish Co., 13 Ct.Cust.App. 155, T.D. 41022, the merchandise consisted of fish roe for food purposes, which was classified by the collector at 30 per centum ad valorem under paragraph 721 of the Tariff Act of 1922, 42 Stat. 892 as fish roe for food purposes "packed in ice." It appeared that the fish roe in question, after extraction from the roe sturgeons, was placed in open pails or containers and, in that condition, imported. The court therein held that the involved merchandise was not classifiable under the provisions of said paragraph 721, supra, either directly or by similitude, and, in disposing of the question of the application of the similitude provisions of the pertinent act to the imported goods, 13 Ct.Cust.App. at pages 159–161, stated:

"The Congress, in framing the language of paragraph 721, supra, used the language 'fish roe for food purposes, packed in ice or frozen, prepared or preserved, by the addition of salt in any amount, or by other means.' If it had been intended to include all fish roe for food purposes, simple and plain language to that effect would have been sufficient. But the tariff rates of that paragraph were specifically restricted to certain *kinds* of fish roe, or that imported in a certain condition. Having thus excluded from the language used words which would have included the fish roe in question here, it will be assumed the Congress did not intend to include it within the scope thereof, but under some other provision. [Italics ours.]

\* \* \* \* \* \*

Testing the case at bar by the rule of law just quoted, we are unable to conclude that the goods imported here are classifiable under paragraph 721 by similitude. The court may properly take judicial notice that fresh fish roe for food purposes, in pails or containers, is the same in material, quality, texture, and use, as fresh fish roe packed in ice. The only difference is that Congress imposed a certain rate of duty upon it under paragraph 721 if it was packed in ice, and failed to impose the same rate of duty upon it under that paragraph if it was not so packed in ice. *The same material being involved* and the only difference being one of packing, the claim for classification by similitude can not be allowed. \* \* \*" [Italics ours.]

In United States v. Fenton Co., 13 Ct. Cust.App. 538, T.D. 41426, the involved

merchandise consisted of frozen sea herring, which the importer claimed was entitled to free entry under paragraph 1656 of the Tariff Act of 1922 for "Fresh sea herring and smelts and tuna fish, fresh, frozen, or packed in ice." In holding that fresh sea herring were the only herring entitled to free entry under the pertinent paragraph of the act and that sea herring which had been frozen or packed in ice were not so entitled, the court, 13 Ct.Cust.App. at page 539, stated:

"After a careful examination of the subject including a review of previous tariff acts and various applicable decisions, we came to the deliberate conclusion that Congress in enacting paragraph 270 of the act had intended to distinguish between fresh mackerel and mackerel frozen or packed in ice, even though in some senses the latter might be called fresh mackerel; that is to say, that by using the terms fish fresh, fish frozen, and fish packed in ice, Congress had differentiated between these three *classes* of fish. In that conclusion we agreed with the Board of General Appraisers in that case.

"The same distinction is found in paragraph 1656 as well as in 717 of the present act.

"If Congress intended that sea herring frozen, or packed in ice, should be given free entry under paragraph 1656, it were unnecessary to insert the word 'fresh' before 'sea herring' in the paragraph as first enacted by the House. The insertion of that word at the beginning of the paragraph, and its retention where it was first placed by the House, clearly indicates that Congress intended to continue its former distinction between fish fresh, fish frozen, and fish packed in ice. The first use of 'and' in the paragraph also makes against the importers' contention." [Italics ours.]

The decisions cited above clearly indicate, in our opinion, that Congress, in prior tariff acts, has made a distinction between fish when imported in various conditions and has differentiated between *classes* of fish. So, too, in the present tariff act, Congress has differentiated between classes of fish, providing specifically for [tuna] "fish, prepared or preserved in any manner, when packed in oil or in oil and other substances" (paragraph 718(a) and [tuna] "fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each *(except* fish packed in oil or in oil and other substances)" (paragraph 718(b). [Italics ours.] It would, accordingly, appear that tuna fish, packed in oil or in oil and other substances, is a different class or kind of merchandise than tuna fish, weighing with their contents not more than 15 pounds each, packed in brine, and we so hold.

In E. C. Miller Cedar Lumber Co. v. United States and Border Brokerage Co. et al., 69 Treas.Dec. 330, T.D. 48161, affirmed in E. C. Miller Cedar Lumber Co. v. United States (Border Brokerage Co. et al., Parties in Interest), 86·F.2d 429, 24 C.C.P.A., Customs, 272, T.D. 48701, a motion was made to dismiss the protest of the plaintiff, an American manufacturer, producer, or wholesaler, which was filed under the provisions of section 516 (b) of the Tariff Act of 1930. The grounds upon which said motion was based were that the court had no jurisdiction to review the action complained of in the protest, for the reason that the issue purported to be raised by it was not one subject to protest by American manufacturers, producers, or wholesalers, in that it did not raise either a question of classification or the rate or rates of duty assessed upon imported merchandise, and therefore, did not fall within the purview of section 516(b), supra. The merchandise there in question consisted of certain lumber, which was returned by the appraiser as being free of duty under the provisions of paragraph 1803 of the Tariff Act of 1930, but which was assessed with duty at the rate of $3 per thousand feet, board measure, un-

der the provisions of section 601(c) (6) of the Revenue Act of 1932, 26 U.S.C.A. (I.R.C.1939) § 3424.

The court, in the E. C. Miller Cedar Lumber Co. case (T.D. 48161), supra, page 332, stated:

"The language of the protest raises no question either as to the classification or rate of duty assessed. All that the protest claims is that the ascertainment of the quantity of lumber upon which duty should have been assessed was made upon a wrong basis of measurement. The merchandise involved is sawed lumber. less than one inch thick, and the claim is that the board feet measure should have been ascertained by measuring the merchandise as though it were one inch thick throughout, and not by the rule laid down for the ascertainment of board feet measurement in T.D. 46250 and T.D. 47621."

In granting the motion to dismiss the protest, the court, page 333, commented:

"A careful reading of section 516, supra, leads us to the conclusion that the term 'classification' and the words 'rate of duty' must be construed in the light of tariff history. We quote with approval the following from the brief of counsel for the defendant parties in interest:

" 'In enacting a Tariff Act, Congress forms classes of merchandise by grouping them together into schedules, paragraphs, sub-paragraphs, sections, etc. Classification by the administrative officers consists of the determination, according to legal rules and standards, of the narrowest particular class or division or category thus prescribed into which the imported merchandise falls.' [Italics ours.]

"As to this lumber, the collector definitely fixed its classification before the rate of duty was assessed, and following such classification decided that it was free under paragraph 1803 but subject to the definite rate of duty of $3 per thousand feet, board measure, under section 601(c)

(6) of the Revenue Act of 1932. As before indicated, the regularity of neither of these acts, that of classification or assessment of rate of duty, is made an issue in the protest, and these are the only two grounds upon which an American manufacturer, producer, or wholesaler is given the right under section 516(b), supra, to protest.

"In granting this right to protest to American manufacturers, producers, or wholesalers, Congress extended an extraordinary privilege, and the rule is well settled that the language used in extending such a grant must be strictly construed against the grantee. Zinberg v. United States, 16 Ct.Cust.App. 268, T.D. 42870, and cases therein cited."

The construction adopted by our appellate court in the E. C. Miller Cedar Lumber Co. case, supra, with respect to section 516(b) of the Tariff Act of 1930 here under consideration, is equally applicable in the situation in the case at bar. As indicated in the cited case, Congress, in its enactment of a tariff act, forms classes of merchandise by grouping them together into schedules, paragraphs, subparagraphs, sections, etc. Paragraph 718(a) of the Tariff Act of 1930 provides for fish, prepared or preserved in any manner, "when packed in oil or in oil and other substances," whereas subdivision (b) of paragraph 718 of the said act, under which the imported merchandise was classified, provides for fish, prepared or preserved in any manner, "when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances)." Each subsection of the said paragraph 718 is mutually exclusive, and each embraces a class or kind of merchandise different from the other. Accordingly, merchandise within subdivision (a) of the paragraph in question is not of a class or kind of merchandise as that within the provisions of subdivision (b) of said paragraph, and a manufacturer, producer, or wholesaler of merchandise

classifiable under paragraph 718(a) of the Tariff Act of 1930 is not a manufacturer, producer, or wholesaler of merchandise of the same class or kind of merchandise classifiable under the provisions of section 718(b) of the said act.

Counsel for the plaintiff, in its supplemental brief, directs our attention to the decision of our appellate court in the case of Nootka Packing Co. v. United States, 22 C.C.P.A., Customs, 464, T.D. 47464, as decisive of the issue herein. The merchandise there in question consisted of clam meat, washed, and cut into small pieces, which, according to the testimony of the importers, could be readily identified as parts of clams, then canned in brine and cooked. The imported product was classified under the provisions of paragraph 721(b) of the Tariff Act of 1930 at the rate of 35 per centum ad valorem for "clams, clam juice, or either in combination with other substances." Plaintiffs claimed the merchandise properly free of duty under paragraph 1761 of the said act as shellfish, prepared or preserved. The court therein held the merchandise properly dutiable, as classified, holding that the language in paragraph 721(b) of the Tariff Act of 1930 is not restricted to clams in their raw or natural state nor is it restricted to entire clams, but includes clams in any condition, so long as they are clams. In so finding, the court held applicable the principle that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article."

The holding of our appellate court in the Nootka Packing Co. case, supra, is not, in our opinion, controlling in the determination of the issue here. In the case at bar, unlike the situation in the Nootka Packing Co. case, supra, we are not concerned with an *eo nomine* provision without limitation. While it is true that both subdivision (a) and subdivision (b) of paragraph 718 of the Tariff Act of 1930 provide for "fish," each subsection is limited to a particular class or kind of fish with respect to the condition in which imported. The merchandise in the Nootka Packing Co. case, supra, although cut into small pieces, was still "clams" and properly classifiable as such under the *eo nomine* provisions of the pertinent paragraph of the tariff act in question. Here, the imported tuna fish, packed in brine, is not classifiable under a provision embracing [tuna] fish, prepared or preserved, "when packed in oil or in oil and other substances," and the reasoning employed by the court in the Nootka Packing Co. case, supra, is not applicable to the present case, and, as stated, that case is not controlling in our present determination.

The provisions of section 516(b) of the Tariff Act of 1930, as amended, supra, must be strictly construed. Reed & Barton et al. v. United States, 63 Treas. Dec. 941, T.D. 46422. The plaintiff in the case at bar has conceded that its company does not manufacture, produce, or sell at wholesale tuna fish, packed in brine. Holding, as we do, for the reasons heretofore expressed, that tuna fish, packed in oil, the product produced by the plaintiff herein, is not of the same class or kind of merchandise as tuna fish, weighing with their contents not more than 15 pounds each, packed in brine, it follows that the plaintiff in this case is not an American manufacturer, producer, or wholesaler of the same class or kind of merchandise as that imported. Accordingly, plaintiff is not entitled to invoke the provisions of section 516(b), supra, as amended, with respect to the merchandise here imported.

The motion to dismiss the protest herein is granted. Accordingly, the protest in this case is hereby dismissed. Judgment will issue accordingly.

MOLLISON, Judge (dissenting).

I find myself unable to agree with the conclusion of the majority that plaintiff—

"* * * is not an American manufacturer, producer, or whole-

saler of the *same* class or kind of merchandise as that imported," [italics mine]

and, consequently, is not entitled to invoke the provisions of section 516(b) of the Tariff Act of 1930, with respect to the merchandise involved. Aside from other considerations, which will be developed later, the word "same" does not appear in section 516(b), and it seems to me that its inclusion suggests an unwarranted restriction of the type of merchandise, the importation and classification of which may give rise to litigative rights of American manufacturers, producers, or wholesalers.

The majority reaches that conclusion upon a finding that tuna fish, packed in oil, which is one of the products produced by the plaintiff herein, "is not of the *same* class or kind of merchandise as tuna fish * * * packed in brine" [italics again mine], for the reason that each of those two types of canned tuna fish is classifiable under a different tariff enumeration from the other.

In other words, the majority finds that the language of section 516(b) in reference to—

"* * * imported merchandise of a class or kind manufactured, produced, or sold at wholesale by [an American manufacturer, producer, or wholesaler] * * *"

refers to the specific tariff enumerations or classifications set forth in the tariff act and that, in order to invoke the provisions of that section, the merchandise manufactured, produced, or sold by an American manufacturer, producer, or wholesaler must be such that it would be classifiable under the same tariff enumeration as that imported.

If the basis upon which the majority determines eligibility to litigate under section 516(b) were upheld, some very anomalous results would ensue.

Tariff enumerations or classifications are of many types, some relatively narrow in scope and some extremely broad. *Eo nomine* designations are, generally speaking, an illustration of the former, while designations by composition (which form a large category of tariff eumerations or classifications) are an illustration of the latter. If tariff enumerations or classifications were the test, it would seem that any American manufacturer of anything classifiable under a designation by composition would have litigative rights against the classification or rate of duty imposed by the collector upon any imported merchandise classified under that tariff designation, regardless of whether the domestic merchandise was of the class or kind of that imported *in any respect save in composition*. The test would result in great restriction in the case of *eo nomine* designations, but in almost unlimited extension in the case of designations by composition. Similar results would follow in the case of many descriptive designations.

Furthermore, the very point at issue in many American manufacturer protests is the classification of the imported merchandise. Under the majority view, which would control the rights of an American manufacturer—the classification adopted by the collector, or the classification claimed by the American manufacturer?

Again, if the plaintiff had been an American producer of canned fish, other than tuna, but packed in brine, and classifiable under paragraph 718(b), would it then be eligible to maintain this suit? Seemingly, under the majority view, it would, and yet the majority would deny this right to an American producer of tuna whose interest in the matter would appear to be more legitimate and real than a producer of fish other than tuna.

The foregoing, it seems to me, illustrate some of the anomalies which must flow from the application of the rule laid down by the majority to the tariff act in general. It must be remembered that the rule, if valid, must be applicable and workable in connection with the entire act and not merely in the case of the prepared and preserved fish provisions of the act.

In many parts of the tariff act Congress has wished to express the idea of

sameness or similarity, and it has used words of the nature of "such," "similar," and "like" to express that idea in greater or lesser degree. It has also used words such as "similar competitive article" to denote a stressed facet of similarity and words such as "merchandise of the same general character" to indicate great breadth of scope intended for the term.

Against this background of the careful choice of words to convey its exact intendment in situations involving comparisons of articles and things, coupled with the fact that Congress did not use more exact and narrow terms such as "such," "similar," or "like" in section 516(b), it seems to me that the words "class or kind" in that section must be considered to be broader in scope than those words and to have application in generality rather than in narrow particularity.

The majority has cited and quoted certain opinions of this and our appellate court involving the fish provisions of the tariff act, wherein distinctions for classification purposes made by Congress between fish imported in various conditions have been pointed out and wherein the courts have used the terms "class" or "kind" in referring to those distinctions. The majority has held that the distinctions and characterizations so made have application to the situation existing under section 516(b). None of those cases involved American manufacturer protests, nor was the issue in any of those cases related to the scope of the terms "class or kind," as used in section 516 (b). I, therefore, do not believe that they in any way control or indicate the proper determination of the present issue.

Nor do I find that the decisions of the courts in the E. C. Miller Cedar Lumber Co. case have any application to the matter at hand. The main point determined in that case was that American manufacturer protests were limited by Congress to those raising the issue of the classification or rate of duty imposed by the collector and that *issues such as the amount of duty or method of determining that amount,* where such issues do not involve the proper classification or rate of duty, were not litigable under section 516(b). Neither the result nor the reasoning in that case has any bearing upon the issue before us.

It seems to me that the view adopted by the majority is not warranted by even a strict construction of the American manufacturer provisions of the act. I am of the opinion that the words "class or kind," as used in the statute, relate to the intrinsic nature and commercial characteristics of the merchandise, and not to its tariff classification, and should be realistically interpreted so that where, as here, plaintiff has demonstrated a legitimate and real interest in the matter the right to litigate the issue will be upheld.

While not in any sense agreeing with the view of the majority, I wish to point out that, even under that view, the plaintiff American manufacturer or producer is entitled to maintain this suit. It clearly appears from the evidence that the plaintiff produces a dietetic pack of tuna fish in which no oil or other additive than distilled water is used. The imported merchandise, the classification of which is here sought to be reviewed, consisted of tuna fish, packed in brine, classified under the provision in paragraph 718(b) for fish, packed *other than* in oil or in oil and other substances. That classification is clearly applicable to the plaintiff's so-called dietetic pack of tuna fish, so that, under the majority view, the plaintiff is an American manufacturer or producer of merchandise of the class or kind imported.

For all of the foregoing reasons, I dissent from the reasoning and conclusion of the majority and from the order herein dismissing the protest.